IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CORY LYNN DAUL,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**ASIM ELMAHBOUB, M.D.,**<br>**CRYSTAL CARMICHAEL, M.D.,**<br>**ANDREW MAHTANI, M.D., and**<br>**JOSE NOVOF, M.D.,**<br><br>    **Defendants.** | Case No. 3:21-CV-00610-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion to Strike Portions of Dr. Erik Dubberke's Rebuttal Report filed by Defendants Asim Elmahboub, Crystal Carmichael, Andrew Mahtani, and Jose Novof (collectively "Defendants"). (Doc. 174). Plaintiff Cory Lynn Daul filed a timely response in opposition. (Doc. 176). For the reasons outlined below, the motion is denied.

Daul disclosed an infectious disease expert, Erik Dubberke, M.D., as part of her prima facie case, along with a radiology expert, Jeffrey Creasy, M.D. (Doc. 174). In response, Defendants disclosed a hospitalist, Chad Miller, M.D., an infectious disease expert, Steven Burdette, M.D., an emergency medicine expert, Seth Stearley, M.D., and a neurosurgeon, Harel Deutsch, M.D. (*Id.*). Dr. Dubberke prepared a rebuttal report that Defendants characterize as bolstering Daul's standard of care and causation case, rather than offering proper rebuttal. As such, Defendants seek to strike several portions of the report.

Page 1 of 6

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(a)(2)(D)(ii), rebuttal expert reports must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Moreover, "[t]he proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *United States v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001) (internal quotation marks omitted). Thus, if not offered to contradict, impeach, or defuse the impact of the evidence offered by an adverse party, testimony offered only as additional support to an argument made in case in chief is improper on rebuttal. *Peals v. Terre Haute Police Dep't,* 535 F.3d 621, 630 (7th Cir. 2008). If only part of the rebuttal report contains improper bolstering while other parts fairly respond to the conclusions of the opposing party's experts, the appropriate course is to limit the proposed rebuttal expert's testimony rather than striking it altogether. *Stanfield v. Dart*, No. 10 C 6569, 2013 WL 589222, at *3 (N.D. Ill. Feb. 14, 2013).

## DISCUSSION

Defendants submitted a highlighted version of Dr. Dubberke's four-page rebuttal report. (Doc. 174-1). In total, they highlighted three main portions, which they now ask the Court to strike as improper. Primarily, Defendants argue that Dr. Dubberke impermissibly offered new standard of care criticisms against the hospitalists (in the second paragraph of the rebuttal report), he offered a new causation theory (also in the second paragraph), and he failed to offer proper rebuttal to Dr. Stearley (in the eighth paragraph). As to Dr. Burdette, Defendants argue that Dr. Dubberke agreed with the analysis of when the vertebral osteomyelitis was present, but then offered entirely new opinions for standard of care, unrelated to Dr. Burdette's opinions which focused on causation. Defendants also contend

that this standard of care discussion is not directed at anything Dr. Miller, their standard of care expert, opined either. Next, Defendants assert that Dr. Dubberke's discussion of MRI timing and follow-up only serves to bolster his original report by creating a new causation theory rather than responding to Defendants' experts' contentions. Lastly, Defendants complain that Dr. Dubberke's report does not clearly respond to anything Dr. Stearley discussed in his report, especially as Dr. Dubberke used the phrase "red flags" that never appeared in Dr. Stearley's report.

In opposition, Daul states Defendants seek to omit portions of Dr. Dubberke's report in a piecemeal fashion, without context, which is inappropriate. As to Defendants' contentions regarding Dr. Burdette and Dr. Miller, Daul argues that Dr. Dubberke simply restates the standard of care already listed in his original report and deposition to explain why he disagrees with Defendants' experts' opinions that the infection was not diagnosable until late June and that the physicians had no obligation to follow-up on blood cultures. Daul also refutes that Dr. Dubberke offered a new causation theory in stating that "[i]f the MRI prior to discharge did not demonstrate evidence of vertebral osteomyelitis, the standard of care would still have required empiric treatment course" or "a repeat MRI prior to cessation of antibiotics for *S. aureus* bacteremia 1-2 weeks after the non-diagnostic MRI." Instead, Daul points out that Dr. Dubberke actually responded to the topic raised by Defendants' expert.

The Court agrees with Daul. Starting with the first portion of Dr. Dubberke's rebuttal report, he agrees with Dr. Burdette as to the presence of vertebral osteomyelitis in early June 2019. (Doc. 174-1, p. 1). Then, Dr. Dubberke emphasizes that the standard of care at that time required back examination and daily review of blood culture results by a hospitalist. (*Id.*). This is in response to Dr. Burdette's assertions that starting antibiotics would not have taken

away the pain Daul subsequently experienced. (Doc. 174-2, p. 4). Dr. Dubberke attempts to defuse these assertions by stating that, regardless of potential reduction in pain or possible timelines for a diagnosis, a standard of care existed at that stage that interplays with the causation analysis. Simply because this subject overlaps with Dr. Dubberke's original report does not mean it should be stricken. In this context, the subject is properly addressed through rebuttal. The Court will not strike this portion of Dr. Dubberke's report.

Moving onto the next contested portion, the analysis is similar. Dr. Burdette opined that for a patient "with a drug history, an MRI would have been performed at the time of the consultation as well as repeated ESR and CRP. Had these tests been performed around the 20th of the month, the diagnosis of a spinal infection could have been made and appropriate interventions initiated," as well as "Dr. Creasy opined that the MRI would not have been abnormal during the HSHS admission June 2-8, with which I agree." (Doc. 174-2, p. 4). Again, Dr. Dubberke meets these assertions with a discussion of the standard of care. (Doc. 174-1, pp. 1-2). In doing so, he attempts to address that even if the purported timing for diagnosis and treatment espoused by Dr. Burdette was correct, a standard of care would apply that would have led to a better outcome. (*Id.*). Dr. Dubberke also contends that an MRI need not have been performed around the 20th of the month to breed results. (*Id.*). He states that if the proper standard of care was followed, then a back examination could have led to an efficacious MRI by the day of discharge, June 8, about 10 days after the onset of symptoms. As Dr. Burdette opines that the MRI would not have been abnormal by that time, Dr. Dubberke takes up that hypothetical scenario and explains why an empiric treatment course for *S. aureus* vertebral osteomyelitis or a repeat MRI would have been necessary in that situation. (*Id.*). Moreover, Dr. Miller provided opinion regarding the indication of an MRI

and the result of a negative MRI. (Doc. 174-3, p. 5). While Defendants argue that Dr. Dubberke attempts to offer new standard of care and causation theories in his report, Dr. Dubberke discusses these topics to contradict the notion that anything done differently may not have mattered given the timing of the discharge and the possible MRI results at that time as described by Dr. Burdette and Dr. Miller. The Court will also not strike this portion of Dr. Dubberke's report.

As for the final challenged portion, Defendants argue that Dr. Dubberke's rebuttal to Dr. Stearley's report is improper because he does not clearly challenge or respond to anything Dr. Stearley wrote in his report. Particularly, Defendants highlight Dr. Dubberke's use of the term "red flags" when Dr. Stearley never used that phrase. Dr. Stearley opined at length regarding the standard of care for Dr. Novof regarding Daul's known symptoms at the time, possible courses of action given those symptoms, and the expectation that Dr. Novof apprise himself of the testing results for all his patients. (Doc. 174-6, pp. 2-3). In rebutting Dr. Stearley's report and testimony, Dr. Dubberke simply chose his own term to categorize some symptoms listed by Dr. Stearley that could alert a physician of a possible infection as "red flags." Defendants say Dr. Dubberke does not respond directly to Dr. Stearley's report because he used this term that Dr. Stearley never used. This creates a game of semantics, which is a completely inappropriate basis to strike the relevant portion of the rebuttal report.

Clearly, Dr. Dubberke's report attempts to rebut the contentions raised by Dr. Stearley that Dr. Novof acted appropriately in his medical diagnosis and prescribed course of action. Moreover, Dr. Dubberke's reference to Dr. Novof's logon credentials for the electronic medical records and the standard of care to review those records directly controverts the purported standard of care offered by Dr. Stearley, that "[r]egardless of [Dr. Novof's] ability

or lack thereof to access the electronic medical record, the standard of care does not require an emergency physician to review all of a patient's prior labs, cultures, imaging, or other records." This is a proper topic for rebuttal as it was raised by Dr. Stearley. Again, the Court declines to strike this contested portion of Dr. Dubberke's rebuttal report.

## CONCLUSION

For the foregoing reasons, the Motion to Strike Portions of Dr. Erik Dubberke's Rebuttal Report filed by Defendants (Doc. 174) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   January 25, 2024

*(signature)*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**